## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

GLOBAL COMMODITIES, INC.,

            Plaintiff,

v.

MUNTAS DISTRIBUTION LLC and
MOHAMED BIHI,

            Defendants.

Case No. 21-CV-1773 (NEB/HB)

ORDER ON DEFENDANTS'
MOTION TO DISMISS

---

Global Commodities, Inc. sued Muntas Distribution LLC and Mohamed Bihi for

trademark infringement, unfair competition, and trade dress infringement. Defendants

move to dismiss under Rule 12 of the Federal Rules of Civil Procedure, asserting that the

operative complaint fails to allege facts suggesting infringement. For the reasons below,

the motion to dismiss is denied.

### BACKGROUND[1]

Plaintiff Global sells rice in the United States under two valid federally-registered

trademarks: (1) an image of a fawn by itself; and (2) the fawn image with the words "aahu

barah" above it. (ECF No. 18 ("Am. Compl.") ¶¶ 6–16.) The first mark looks as follows:

---

[1] The Court draws the following background from the Complaint, accepting its factual
allegations as true and drawing all reasonable inferences in Global's favor. *Topchian v.
JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).



(*Id.* ¶ 6.) The operative Complaint attaches photos of Global's rice products with the fawn image, including the following, which depicts the second mark (the fawn image with the words above it):



(*Id.* ¶ 17; ECF No. 18-1 at 3.)

At some point, Defendants Muntas Distribution and Mohamed Bihi (together "Muntas") also began selling rice in the United States. (Am. Compl. ¶¶ 53–55.) According to the Complaint, Muntas uses a "colorable imitation" of Global's fawn image. (*Id.* ¶ 56.) The Complaint alleges that Muntas's use of the image was "likely to cause and has caused confusion, mistake and deception of purchasers as to the source or origin" of the products. (*Id.* ¶ 56.) Muntas's fawn image, as depicted on the rice bags it sells, looks as follows:



(*Id.* ¶ 54.) According to the Complaint, Muntas knew about Global's fawn image trademark when it selected its own fawn image. (*Id.* ¶ 57.) After Global notified Muntas of the alleged infringement, Muntas continued to use the image and allegedly caused "immediate and irreparable injury and damage" to Global. (*Id.* ¶¶ 57–58, 61.)

Global asserts five claims against Muntas: (1) federal trademark infringement; (2) false designation of origin under 15 U.S.C. Section 1125(a); (3) common law trademark infringement; (4) unfair competition; and (5) trade dress infringement. (*Id.* ¶¶ 62–83.) Muntas moves to dismiss all claims. (ECF No. 19.)

## ANALYSIS

### I.    Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Factual allegations in the complaint need not be detailed, but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). In assessing the sufficiency of the complaint, a court may disregard legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678–79. And "'threadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Iqbal*, 556 U.S. at 678). The Court's determination of whether a plaintiff has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Id.* (quotation omitted).

II.     **Trademark, Trade Dress, and Unfair Competition Claims**

To prevail on its federal and common law trademark infringement and unfair competition claims, Global must prove that: (1) it owns a registered trademark that Muntas used or imitated in commerce in connection with the sale of goods; (2) Muntas's use or imitation of Global's mark was unauthorized; and (3) Muntas's use or imitation is

"likely to cause confusion, or to cause mistake, or to deceive."[2] *My Pillow, Inc. v. LMP Worldwide, Inc.*, No. 18-CV-196 (WMW/SER), 2018 WL 6567674, at *2 & n.3 (D. Minn. Dec. 13, 2018) (citing first 15 U.S.C. § 1114(1)(a), and then *ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018)); *see generally DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935–36 & n.3 (8th Cir. 2003) (discussing trademark infringement and unfair competition claims collectively because the federal trademark infringement claims were coextensive with the state law trademark infringement and unfair competition claims). Muntas neither disputes that Global registered the fawn marks[3] nor claims that it had Global's permission to imitate those marks. Rather, it contends that the Complaint fails to plausibly allege the third requirement: likelihood of confusion.

The standard for likelihood of confusion is familiar: Likelihood of confusion exists when a defendant's use of a mark is likely to confuse, deceive, or cause mistake among an appreciable number of ordinary buyers about the source of or association between the parties' products or services. *Duluth News-Trib. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th

---

[2] The parties did not analyze the likelihood-of-confusion requirement for Global's trade dress claim separate from its trademark infringement claims; neither will this Court. *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994) ("The difference between trade dress and trademark is no longer of importance in determining whether trade dress is protected by federal law.").

[3] Muntas's initial brief ignores the allegations of Global's first fawn mark (without the words above it). (*See* ECF No. 21 ("Defs' Br.") at 2 (mistakenly contending that Global's only alleged trademark is of the fawn with the words "aahu barah" above it).)

Cir. 1996). "[L]ikelihood of confusion is a factual question." *ConAgra, Inc. v. George A. Hormel, & Co.*, 990 F.2d 368, 371 (8th Cir. 1993).

When evaluating the likelihood of confusion, courts consider these factors as a guide to determine likelihood of confusion: (1) the strength of the trademark owner's mark; (2) the similarity between the trademark owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers; and (6) evidence of actual confusion. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011) (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). The Eighth Circuit has held that "no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases."[4] *Id.* (citation omitted).

### A. *Strength of the Mark*

In evaluating a mark's strength, courts consider both the mark's conceptual and commercial strength. *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 888 (8th Cir. 2014).

---

[4] The Eighth Circuit has also noted that likelihood-of-confusion factors are "not entirely separable. For example, it is inappropriate to conduct a side-by-side comparison of the elements of two products' trade dress . . . without reference to the senior mark's strength or the market conditions under which likely consumers would see the marks." *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1054 (8th Cir. 2005).

*Conceptual strength.* Courts typically analyze a trademark's conceptual strength on a distinctiveness spectrum, by categorizing marks as either generic, descriptive, suggestive, or arbitrary. *See id.* (explaining that "a descriptive mark conceptually is the 'weakest protectable mark'"); *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010) (listing the four categories on the spectrum). "On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection." *Sensient*, 613 F.3d at 763.

Global's Complaint does not specifically address distinctiveness; instead, it simply alleges that its fawn marks are federally registered trademarks. (Am. Compl. ¶¶ 6–7, 12–13.) Because "registration of a mark creates a rebuttable presumption that the mark is valid," registered marks "are presumed to be distinctive." *Aromatique*, 28 F.3d at 869. But the registration of a trademark is "only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action." *Lovely Skin*, 745 F.3d at 887 n.4 (quoting *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987)). Given the presumption of distinctiveness afforded to Global's registered marks, and making every reasonable inference from the complaint allegations, the Court finds that the Complaint sufficiently alleges that Global's marks have conceptual strength. (*See* Compl. ¶¶ 7–8, 12–13; ECF No. 18-1 at 1–2 (federal trademark registrations for Global's marks).)

7

*Commercial strength.* A trademark's commercial strength is "based on the 'public recognition and renown' of the mark as shown by the amount of advertising, sales volume, features and reviews in publications, and survey evidence." *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1042 (D. Minn. 2015) (collecting cases). In evaluating commercial strength, the relevant market is "'the class of customers and potential customers of a product or service, and not the general public.'" *Zerorez*, 103 F. Supp. 3d at 1042 (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1375 (Fed. Cir. 2005)).

The Complaint alleges that Global's fawn marks have received considerable recognition in the relevant market in the United States, including Minnesota, where Global has continually sold and "extensively advertised" its products. (Am. Compl. ¶¶ 7–16; *see* ECF No. 18-1 at 1–2 (federal registrations for Global's fawn trademarks stating their "first use" was December 1997).) It alleges that Global has been selling its products under the fawn marks "long prior" to Muntas's acts. (*Id.* ¶ 9.) It attaches exhibits of examples of its products using its fawn marks, as well as several video advertisements of its rice products sold under the fawn marks. (*Id.* ¶¶ 48–51); *see Zerorez*, 103 F. Supp. 3d at 1042 (finding the "Zerorez" mark had commercial strength because it had been used continuously in the United States since 2003 and significant resources had been expended in advertising and promoting the business).

Not surprisingly, Muntas contests Global's characterization of the recognition of its mark. It contends Global's mark is weak because the Complaint is silent about Global's sales, market share, public recognition, product reviews, and the like. (Defs' Br. at 6, 13–14.) In addition, Muntas notes that other rice importers use deer or fawns as part of their logos. (Defs' Br. at 14–15; ECF No. 26 ("Defs' Reply") at 6–7; *see Gen. Mills*, 824 F.2d at 626–27 ("[E]vidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection.").) But the Complaint does not address other rice importers, and at this stage of the litigation, the Court must take the allegations in the Complaint as true and grant Global all reasonable inferences from the pleading. Nothing in the Complaint reasonably implies that other importers—aside from Muntas—use a deer/fawn as part of their logos.

To prove its point about other importers, Muntas provides several pictures purporting to be bags of rice sold by other importers that display images of deer. (Defs' Br. at 16–18; *see* Defs' Reply at 6–7 (describing other deer marks).) It cites *Noble Systems Corp. v. Alorica Central, LLC*, for the proposition that the Court may consider this defense despite Global's "artful avoidance of mentioning the facts giving rise to the defense." 543 F.3d 978, 983 (8th Cir. 2008) (citation omitted). *Noble* presented a different situation; there, the court took judicial notice of a public record. *See id.* at 982 ("Pandora's financing statement is on file with the state of Minnesota and thus is a public record that can be considered even if not mentioned expressly in the pleadings."). Muntas's unverified

pictures are neither public records nor necessarily embraced by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). And Muntas offers no identifying information about these pictures or their sources, instead inviting the Court to complete an "internet search" to find them. (Def.'s Br. at 16.) Such a search by the Court would be, of course, improper. The Court declines to consider the pictures in Muntas's briefing and will not convert the motion to dismiss to a motion for summary judgment. *See Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, Civ. A. No. DKC 10-0327, 2011 WL 890501, at *6 (D. Md. Mar. 14, 2011) (refusing to consider an internet search that revealed "at least twenty other haunted attractions" using the same name because "unsupported factual assertions not found in the complaint . . . are not properly considered on a motion to dismiss under Rule 12(b)(6)").

At oral argument, Muntas argued that the Court may take judicial notice of three federal lawsuits Global has brought against other alleged trademark infringers, including one pending before this Court.[5] (ECF No. 25 ("Pl's Br.") at 6 (citing among others, *Glob. Commodities, Inc. v. Gold Star Dist'n Inc.*, No. 21-CV-2068 (NEB/HB) (D. Minn.)); *see Zean*, 858 F.3d at 526 (holding courts may consider "matters of public record" on a motion to

---

[5] In its reply brief, Muntas also claims that a European Union trademark for the "word mark" of "aahu barah" is suitable for judicial notice, and attaches, with no supporting affidavit or declaration, what appears to be pages printed from the internet, without a webpage address. (ECF No. 26 at 6–7; ECF No. 26-2 at 3–4.) Even if the Court were to take judicial notice of this information, the existence of this European Union trademark does not change the Court's analysis, particularly since it must take the allegations in the Complaint as true and grant Global all reasonable inferences from the pleading.

dismiss) (citation omitted). While the Court is able to consider these lawsuits as public records, making all reasonable inferences in Global's favor, the lawsuits simply show that Global is enforcing its fawn trademarks against other infringers.

Making every reasonable inference from the complaint allegations, the Court finds that the Complaint sufficiently alleges that Global's marks have commercial strength.

### B.  *Similarity Between the Marks*

As to similarity between the marks, the Complaint does not allege that Muntas used the "same representation" of Global's trademarked fawn. (Defs' Br. at 2.) But infringement is not limited to identical representations of a trademark. *See* 15 U.S.C. § 1114 (providing an infringement claim for "a reproduction, counterfeit, copy, *or* colorable imitation of a registered mark") (emphasis added). "[I]n analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features." *Gen. Mills*, 824 F.2d at 627. A court's "comparison of the similarity between marks and products must occur in a context that recognizes how consumers encounter the products and how carefully consumers are likely to scrutinize the marks." *Kemp*, 398 F.3d at 1054.

The Complaint provides pictures of the parties' fawn images, including the Global's fawn marks on bags of its rice. (Am. Compl. ¶¶ 6–7, 12, 53–54; ECF No. 18-1 at 1–33.) It alleges that Global sold products, including rice, using its fawn image trademarks long before Muntas's use of "a colorable imitation of Plaintiff's Fawn Image

trademark" in selling rice. (Am. Compl. ¶¶ 14–16, 53–54.) Drawing all reasonable inferences in Global's favor, the pictures of Muntas's bag of rice and Global's bag of rice support a plausible inference of the similarity of the marks. (*Id.* ¶¶ 17, 54; ECF No. 18-1 at 3.) The Court concludes that the Complaint plausibly alleges that the parties' marks are similar.

### C. Degree of Competition

"If the two companies' products are closely related, confusion among customers is more likely." *Sensient*, 613 F.3d at 766. And a consumer may be confused when a defendant uses "identical or substantially similar marks while offering the same category of services in the same geographical location." *Cmty. of Christ*, 634 F.3d at 1009 (collecting cases).

The Complaint alleges that Global sells rice using its trademarked fawn images, and that Muntas used or imitated Global's fawn mark in selling bags of rice in the same geographic location: the United States, including Minnesota. (Am. Compl. ¶¶ 9–14, 53–56.) Taking these allegations as true and making all reasonable inferences in Global's favor, the Court finds that the Complaint's plausibly alleges that the parties' products compete with each other.[6]

_____

[6] Global asserts in its brief that both parties sell rice "to the same type of customer," and that rice is "a low-cost product." (Pl's Br. at 8; *see id.* at 25.) Because these allegations are not in the Complaint, the Court disregards them on this motion to dismiss. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### D.  Intent to Confuse the Public

An alleged infringer's intent "to pass off its goods as the product of another raises an inference of likelihood of confusion, but intent is not an element of a claim for trademark infringement." *Squirt Co.*, 628 F.2d at 1091. Although "proof of bad intent is not required for success in an infringement or unfair competition claim, 'the absence of such intent is a factor to be considered.'" *Sensient*, 613 F.3d at 766 (citing *Frosty Treats Inc. v. Sony Comput. Ent. Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005)). And "[a]n inference of an intent to trade upon the plaintiff's good will arises if the defendants, with knowledge of plaintiff's mark, chose a mark similar to that mark from the infinite number of possible marks." *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1429 (D. Minn. 1989) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963)).

The Complaint alleges that Muntas "had full knowledge of [Global's] Fawn Image trademark at the time it selected their Fawn trademark," that it has "continued to use the infringing mark or a colorable image thereof even after [Global] notified [Muntas] of [its] infringement," and that it "willfully misappropriated [Global's] trademarks." (Am. Compl. ¶¶ 57, 59.) The Complaint offers no factual allegations to support this conclusion.[7] The Court need not decide whether the Complaint's allegations plausibly assert intent,

---

[7] In its brief, Global contends that Muntas was a former customer of Global's and that Muntas "decided to come as close as it could to [Global's] registered trademark." (Pl's Br. at 9.) Again, because those factual allegations are not in the Complaint, the Court does not consider them for this motion. *Glick,* 944 F.3d at 717.

because it is not required for the claims, and the lack of specific allegations of intent is not dispositive. *E.g.*, *JS IP, LLC v. LIV Ventures, Inc.*, No. 8:11CV424, 2012 WL 2871794, at *7 (D. Neb. July 12, 2012) (denying a motion to dismiss infringement claim despite finding that the plaintiff failed to plausibly allege defendant's intent to deceive) (citing *Duluth News-Trib.*, 84 F.3d at 1096).

### E.  Consumers' Degree of Care

The *SquirtCo* factors also include consideration of the degree of care exercised by the purchaser. "[T]he kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo.*, 628 F.2d at 1091 (citation omitted). In considering this factor, the Court stands in the shoes of "the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Sensient*, 613 F.3d at 769 (citation omitted).

The Complaint alleges that both Global and Muntas sell bags of rice using fawn images. It does not address the cost or conditions of purchase, or the degree of care exercised by consumers when purchasing bags of rice.[8] The Complaint does not address

---

[8] Global asserts in its brief—but not its Complaint—that the parties "sell rice in a variety of sized packages and the rice is a low-cost product sold for under a couple of dollars per pound," and that confusion is "particularly likely here where Muntas previously sold Global's rice under Global trademarks." (Pl's Br. at 10.) Once more, since Global did not

degree of care, but the Court cannot conclude that a failure to do so dooms the cause of action.

### F. Actual Confusion

The Complaint does not allege actual confusion or other evidence of confusion such as expert opinion or survey results. (Defs' Br. at 4; Pl's Br. at 24–25.) But "'actual confusion is not essential to a finding of trademark infringement'"; it is merely "a kind of proof a court may consider." *Warner Bros. Ent. Inc. v. X One X Prods.*, 840 F.3d 971, 981 (8th Cir. 2016) (citing *SquirtCo.*, 628 F.2d at 1091). As a result, the Court declines to dismiss Global's claims for failing to include instances of actual confusion. *See, e.g., Moresource, Inc. v. Extra Help, Inc.*, No. 4:13 CV 235 DDN, 2013 WL 2338406, at *3 (E.D. Mo. May 29, 2013) (denying a motion to dismiss an infringement claim in part because the law does not require actual confusion).

### G. Summary of Likelihood-of-Confusion Factors

For the reasons given above, the Complaint alleges facts plausibly supporting at least some of the likelihood-of-confusion factors: (1) the strength of Global's marks; (2) the similarity between the Global's mark and Muntas's allegedly infringing logo; and (3) the degree of the parties' competition. The Complaint is more marginal on facts

---

include these factual allegations in the Complaint, the Court does not consider them. *Glick,* 944 F.3d at 717.

supporting: (4) Muntas's intent to confuse the public; (5) customers' degree of care; and (6) actual confusion.

In considering the totality of the *SquirtCo* factors, "no one factor controls." *Cmty. of Christ*, 634 F.3d at 1009. Given that likelihood of confusion is a fact-intensive inquiry, *ConAgra*, 990 F.2d at 371, at this early stage of the litigation, the Court declines to determine which of these factors may be entitled to more weight. The Court finds that Global has plausibly pled a likelihood of confusion under the *Iqbal*/*Twombly* standard.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendants' Amended Rule 12 Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 19) is DENIED.

Dated: January 24, 2022                    BY THE COURT:

                                           s/Nancy E. Brasel
                                           Nancy E. Brasel
                                           United States District Judge